**Craig T. BAILEY, Appellant**

v.

**COMMISSIONER OF SOCIAL SECURITY.**

No. 08–4344.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 17, 2009.

Filed: Dec. 3, 2009.

---

Thomas H. Klein, Esq., Smith & Klein, Eatontown, NJ, for Appellant.

Susan J. Reiss, Esq., Social Security Administration, Office of General Counsel—Region II, New York, NY, for Commissioner of Social Security.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Craig T. Bailey ("Bailey") appeals from the District Court's order affirming a final administrative action of the Commissioner of Social Security (the "Commissioner"). The appeal is limited to the Commissioner's decision to deny benefits prior to July 15, 2002. The District Court exercised jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and we have appellate

jurisdiction pursuant to 28 U.S.C. § 1291. For the following reasons, we will affirm.

## I. Background

Appellant Craig T. Bailey was injured in a car accident in 1989, and consequently underwent surgical fusion of three vertebrae. In addition to continuing neck stiffness and pain resulting from this injury, in subsequent years he has had severe and escalating heart trouble, including several heart attacks, coronary artery disease, and hypertension. He was first hospitalized for recurrent chest pain in September 1992. At that time, he required an angioplasty, and was diagnosed with coronary artery disease, a recent myocardial infarction, and a history of hypertension. He was again hospitalized for chest pain in mid-October 1997. After tests showed reversible ischemia and coronary artery disease, he underwent another angioplasty with stent deployment. Bailey alleges that his disability began at this time.

Bailey also alleges a history of anxiety and depression arising from frustration with his physical limitations after the car accident and his heart problems. His medical records reflect complaints of anxiety and sleep trouble after his hospitalization in October 1997. At that time, he was also referred to a mental health specialist, although there is no evidence on the record regarding a mental health examination at this time. Bailey did not mention his anxiety in his application for benefits. However, in his initial hearing before an Administrative Law Judge ("ALJ"), his lawyer brought up the issue, and Bailey testified that he was withdrawn and had anxiety because he was physically limited at a relatively young age.

Bailey has past work experience as a carpenter. He attempted to return to this work shortly after his alleged onset date of disability, in October 1997, but only lasted two weeks due to shortness of breath. In addition, he testified that he worked as a carpenter from July to September 1999 and from October 1999 to January 2000. He made an attempt to return to work in January 2002 and from April to July 2002, but the work was too hard and demanding.

Bailey first filed an application for disability insurance benefits and supplemental security income on October 15, 1997, alleging disability as of October 10, 1997, due to "[d]ifficulty in breathing, chest pain when doing strenuous duties" caused by heart disease, high blood pressure, and residual effects from his neck fracture. Tr. 65. The Social Security Administration had Bailey examined; the consulting doctor asserted that Bailey had coronary artery disease with continued ischemia and anginal attacks on exertion. A psychiatric evaluation was also scheduled, but it appears that either Bailey did not attend or the records were lost. Two residual functional capacity ("RFC") assessments each found that Bailey had an RFC that would not preclude him from working. The Commissioner denied Bailey's benefits application initially and on reconsideration. After a hearing, at which Bailey testified, the ALJ issued a decision on July 30, 1998, finding no disability. The Appeals Council denied a request for review, and Bailey challenged this decision in the District of New Jersey.

The District Court remanded the case to the Commissioner by consent of the parties on May 7, 2002. The Appeals Council vacated the earlier ALJ decision and remanded the case to a different ALJ, with specific instructions to develop the record and address Bailey's claims of anxiety and depression. Bailey was again hospitalized in July 2002 after experiencing crushing chest pain, and underwent cutting balloon angioplasty and intracoronary radiation therapy to treat his coronary artery disease. On November 13, 2002, Bailey underwent a mental examination; the doctor

found that Bailey suffered from anxiety, depression, and agoraphobia based on his current inability to work and function after his recent heart attack in May 2002. Bailey also was evaluated by a psychiatrist, on February 19, 2003; Bailey asserted that he suffered from severe anxiety based on a fear of impending death, because "within a year or so he has submitted to five angioplast[y] procedures and open heart surgery is in the forecast." Tr. 253. On March 26, 2003, after considering the new evidence at another hearing, the new ALJ established Bailey's onset date of disability as July 15, 2002. The ALJ found that Bailey retained an RFC[1] for a full range of sedentary work until July 15, and that Bailey's allegations of mental impairments prior to July 15 "seem exaggerated and are not supported by the medical evidence of record." Tr. 162. The Appeals Council again denied Bailey's request for review. On appeal, the District Court affirmed the Commissioner's final decision as to the onset date. Bailey appeals.

## II. Jurisdiction and Standard of Review

Any individual may obtain judicial review in federal district court of a final decision of the Commissioner, if the decision was made after a hearing to which the individual was a party. 42 U.S.C. § 405(g). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We apply the same standard of review as the district court: we exercise plenary review over the ALJ's application of the law, and review the ALJ's findings of fact to determine if they are supported by "substantial evi-

dence." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir.2007). In the social security benefits context, "substantial evidence" is less than a preponderance of the evidence, but "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This standard is not met if the Commissioner "ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983).

The statutory term "disability" indicates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a person is "disabled," an ALJ applies a five-step sequential analysis set forth in 20 C.F.R. § 404.1520. At particular issue in this case is the fifth step,[2] at which the ALJ considers the RFC assessment and the claimant's age, education, and work experience to determine if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If at this step the ALJ determines that the claimant is not able to make an adjustment to other work, the claimant is disabled. *Id.* The onset date of this disability is the first day an individual is "disabled" as the term is defined in the statute and regulations. Soc. Sec. Ruling 83–20, 1983 SSR LEXIS at *2 (1983).

---

1. An RFC describes the extent of activities an individual can do in a work setting despite some physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).

2. The ALJ did not decide whether Bailey's employment from July to September 1999 and from October 1999 to January 2000 con-

stituted substantial gainful activity for step one of the analysis, because he concluded at step five that Bailey retained enough of an RFC to not be disabled prior to July 2002. 20 C.F.R. § 404.1520(a)(4)(i); *see also* 20 C.F.R. § 404.1572 (defining substantial gainful activity).

### III. Whether the Onset Date Is Supported by Substantial Evidence

■ On appeal, Bailey first argues that the onset date of July 15, 2002 is not supported by substantial evidence because the ALJ did not consider medical evidence regarding Bailey's alleged anxiety and depression. Bailey claims that this evidence shows that the onset date of disability was October 10, 1997. We disagree.

After summarizing new evidence entered into the record, the ALJ found that Bailey's allegations of mental impairments prior to July 15 "seem exaggerated and are not supported by the medical evidence of record." Tr. 162. When an ALJ rejects potentially persuasive evidence, "the ALJ is not required to supply a comprehensive explanation ...; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir.1981). The ALJ's findings must sufficiently develop the record to allow for judicial review. *Id.* Here, in an exhaustive review of the record, the ALJ specifically noted evidence that supported Bailey's claims of anxiety and depression, and concluded that "the combination of his mental limitations and the limitations resulting from his coronary artery disease has precluded him from performing any work ... beginning July 15, 2002. Accordingly, for the period up to July 15, 2002, the undersigned concludes that the claimant had [an RFC]." Tr. 163. The exposition of the record and the ALJ's analysis provide a sufficient explanation of the ALJ's findings to allow for judicial review.

Further, while there are several instances on the record noting the presence of anxiety and depression, we agree with the District Court that the ALJ's decision to fix the onset of disability at July 15, 2002, is supported by substantial evidence. Evidence of Bailey's anxiety and depression appears on the record first as chart notations from visits to the Jersey Shore Medical Center, on November 24, December 22, and December 29, 1997. However, when Bailey applied for benefits on January 5, 1998, he claimed only physical disability, and did not reference any anxiety or depression. At the first administrative hearing, on May 18, 1999, Bailey's counsel alleged the existence of "significant depression and anxiety," and Bailey testified that he was anxious and depressed. However, despite his eighteen-month history of these problems, Bailey did not assert that the anxiety and depression in any way prevented him from seeking work. This undercuts his claim that his anxiety and depression starting in 1997 justifies an earlier onset date.

There is substantial evidence in the record suggesting that Bailey's anxiety and depression worsened after his hospitalization on July 15, 2002. Bailey began to take medication for anxiety and depression after this hospitalization. When he saw a doctor on October 30, 2002, Bailey complained of severe anxiety and agoraphobia. Bailey also complained of depression during a medical evaluation on November 27, 2002. At a psychiatric evaluation on February 19, 2003, Bailey said he was experiencing severe anxiety based on a fear of impending death, specifically due to five angioplasties "within a year or so" and likely open-heart surgery in the future. Tr. 253. Although this evidence does justify the ALJ's finding of a July 2002 onset date, it does not support Bailey's assertion that the February 2003 exam confirmed a longstanding mental impairment.

■ Bailey also cites our decision in *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001), to support his argument that the ALJ should have required the opinion of a medical advisor to help establish the cor-

rect onset date of disability. The District Court correctly rejected this argument. As the District Court noted, further decisions of our court have confirmed that *Walton*'s directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting. *E.g., Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 n. 7 (3d Cir.2003).

This type of situation does not present itself here, where the claimant does not allege that the record is incomplete or conflicting. At the first ALJ hearing, counsel for Bailey did mention that a psychological examination had been scheduled, but either Bailey did not attend or the records were lost. This likely contributed to the Commissioner's consent to remand the case for further development of the record with regard to Bailey's alleged anxiety and depression. Based on this directive, Bailey underwent a psychiatric evaluation on February 19, 2003, and this evaluation was included in the record. The ALJ did not rely on a lack of medical records showing treatment for mental illness as support for the absence of disability. Therefore, based on the medical evidence in the record, there is substantial evidence supporting the decision of the ALJ to fix the onset date of disability on July 15, 2002, and to deny benefits before that date.

## IV. Whether the ALJ Improperly Disregarded Bailey's Symptoms

Bailey next argues that the ALJ did not properly consider his asserted symptoms and non-exertional limitations in determining the existence of an RFC prior to July 15, 2002, and gave insufficient weight to Bailey's characterization of the severity of his anxiety and depression during this time.

When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for the findings. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999). Allegations of subjective symptoms must be supported by objective medical evidence. 20 C.F.R. § 404.1529(b). Social Security Ruling ("SSR") 96–7p also makes clear that an individual's statements about symptoms are not enough to determine disability, but must be corroborated by medical evidence. Soc. Sec. Ruling 96–7p, 1996 SSR LEXIS 4 at *4–5 (1996).

Despite Bailey's arguments to the contrary, the ALJ followed the procedures of SSR 96–7p in considering Bailey's subjective symptoms. Here, the ALJ provided an exhaustive exposition of the medical evidence in the record, including diagnoses of anxiety and depression in 1997 and 1998 from the Jersey Shore Medical Center charts and Bailey's prior testimony. However, the ALJ rejected Bailey's statements as to his symptoms for the period before July 15, 2002, because they were "not supported by the medical evidence of record." The ALJ then examined Bailey's medical records from the period before July 15, 2002, specifying which parts of the record were relied on in making this determination. In particular, the ALJ noted medical evidence demonstrating severe anxiety and depression after Bailey's July 2002 hospitalization. Because the ALJ specifically rejected Bailey's subjective symptoms for the period before July 15, 2002, and based these findings on specific medical evidence in the record, the ALJ properly discounted Bailey's testimony.

## V. Whether the ALJ Improperly Relied on Medical–Vocational Guidelines

Finally, Bailey argues that the ALJ improperly relied on the Medical–Vocational Guidelines in determining the onset date of disability. In particular, Bailey argues that his alleged non-exertional limitations (depression and anxiety) precluded sole reliance on the Guidelines, and that the Commissioner should have offered further evidence and testimony from a vocational expert to carry the burden under step five. The District Court correctly rejected Bailey's arguments.

We have held that ALJs may rely on the Guidelines without hearing testimony from a vocational expert, as long as the claimant does not have both exertional and non-exertional limitations. *E.g., Sykes v. Apfel,* 228 F.3d 259, 267 (3d Cir.2000). In this case, the ALJ found that no non-exertional limitations existed prior to July 15, 2002. As described above, this conclusion is supported by substantial evidence in the record. Therefore, because the ALJ concluded that no non-exertional limitations existed prior to July 15, 2002, it was appropriate to rely on the Guidelines without seeking testimony from a vocational expert.

## VI. Conclusion

For the reasons set forth above, we will AFFIRM the Order of the District Court.